UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE  DIVISION

DANNY K. TERRELL and RANDY C.          )
EDWARDS,                                )
                                        )
            Plaintiffs,                 )
                                        )
vs.                                     )        2:04-cv-095-JDT-WGH
                                        )
                                        )
SOO LINE RAILROAD COMPANY d/b/a         )
CANADIAN PACIFIC RAILWAY,               )
                                        )
            Defendant.                  )


**ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 53)**[1]

Plaintiffs sued their employer under the Federal Employers' Liability Act (FELA).

Defendant has moved for partial summary judgment, and the court decides as follows.


**I.    BACKGROUND**

This case arises out of a truck-train accident that occurred about 12:45 p.m. on

May 22, 2001, at the Greene County railroad crossing, at or near Milepost 213.2, at

Baseline Road, near the town of Linton, Indiana ("Baseline Road crossing").  (Terrell

Compl. ¶ 5.)[2]  At the time of the accident, the weather was clear and visibility was

---

[1]  This Entry is a matter of public record and will be made available on the court's
web site.  However, the discussion contained herein is not sufficiently novel to justify
commercial publication.

[2]  On November 12, 2004, this action was consolidated with a separate claim
raised by Plaintiff Terrell arising out of injuries sustained on October 10, 2001.  The
current motion for partial summary judgment applies only to Plaintiffs' FELA claims
relating to the May 2001 collision.

unlimited.  (Def.'s Ex. A, Terrell Dep. at 38, ll. 11-14, 19.)  At the crossing itself, stop

signs and white reflectorized "crossbuck" railroad signs marked the location of this

grade crossing intersection.  (*Id.* at 65, ll. 11-13.)  The reflectorized crossbuck signs

were approved by the Federal Highway Administration and installed with federal funds

prior to the May 22, 2001 accident.  (Def.'s Ex. C, Harrison Decl., ¶¶ 5, 8; Def.'s Ex. D,

Hull Dec. ¶¶ 5-9.)

Two days after the accident, May 24, 2001, Alice Ryan, a casualty management

representative for CP Rail, photographed the Baseline Road crossing from the view of a

motorist approaching from the east, looking north, the direction from which Plaintiffs'

train was traveling.  (Def.'s Ex. E, Ryan Decl., ¶¶ 2, 4.)  That photograph fairly and

accurately represents the view from the crossing as it was on May 22, 2001, the date of

the accident.  (*Id.* ¶ 5.)  The photograph reflects that from behind the stop sign at the

Baseline Road crossing, there was a clear and unobstructed view of approaching trains,

which is estimated to be in excess of one-quarter of a mile.  (*Id.* ¶¶ 5-6 & Ex. 1.)[3]  The

photograph also shows that the crossbuck sign was missing the first "R" in

"RAILROAD," and some of the paint for the "D" was missing.  (Def.'s Ex. E, Ex. 1.)  All

of the letters in the word "stop" on the stop sign, however, were completely visible.

---

[3]  Plaintiffs offered their counsel's declaration and copies of photographs taken at
the subject crossing on August 3, 2004–more than two years after the collision–to
establish that trees and other foliage obstructed the view of a motorist approaching the
crossing.  They also offer Mr. Edwards's testimony that he believed "the vegetation
should have been cut back far enough for the truck driver to be able to see us in plenty
of time."  (Edwards Dep. at 30.)

The accident occurred when Greene County Highway Department employee Kevin Byers drove his fully loaded dump truck westbound past the stop sign and crossbuck signs, directly into the path of a southbound CP Rail train.  (Terrell Compl. ¶ 5.)  At the time of the accident, the Louisville-bound CP Rail train was being operated by Plaintiff, Locomotive Engineer Randy C. Edwards, who was seated on the right-hand (west) side of the lead locomotive.  (Terrell Dep. at 40-4; Def.'s Ex. B, Edwards Dep. at 13, ll. 19-24.)  Plaintiff, Conductor Danny K. Terrell, was positioned on the left-hand (east) side of the lead locomotive.  (Terrell Dep. at 40, ll. 22-24; Edwards Dep. at 13, ll. 19-24.)  At the whistle post, Plaintiff Edwards began sounding the required warning whistle sequence in compliance with Indiana law.  (Terrell Dep. at 48, ll. 15-20; Edwards Dep. at 26-27, ll. 25, 1-2.)  As the train neared the Baseline Road crossing, Plaintiff Edwards was the first to spot Byers's dump truck as it approached the crossing from the east; Plaintiff Terrell also observed the dump truck approaching.  (Terrell Dep. at 48-49, ll. 22-25, 1; Edwards Dep. at 13, ll. 15-18.)  Plaintiffs observed that the dump truck did not slow down or stop at the stop sign before proceeding onto the crossing.   (Terrell Dep. at 50, ll. 8-14; Edwards Dep. at 14, ll. 6-14.)  Plaintiff Edwards applied the train's emergency brakes immediately following the collision.  (Edwards Dep. at 26, ll. 18-24.)  It would have been impossible to stop the train in the short distance that remained when Plaintiffs saw Byers approach the tracks without slowing or stopping.  (Terrell Dep. at 71; Edwards Dep. at 16.)

Plaintiff Terrell claims that on impact he bounced up and down on the seat in the locomotive cab.  (Terrell Dep. at 139, ll. 8-21.)  Plaintiff Edwards also claims that on

3

impact he bounced up and down on the seat in the cab.  (Edwards Dep. at 48, ll. 17-22.)

When the train came to a stop following the accident, Plaintiff Terrell exited the cab and

walked back to the crossing to check on the condition of the dump truck driver.  (Terrell

Dep. at 52, ll. 21-25.)  The CP Rail train was traveling about twenty-three m.p.h., well

within the maximum permitted speed of fifty m.p.h. for this stretch of track.  (Terrell Dep.

at 43, ll. 18-24; Edwards Dep. at 15, ll. 1-9.)  The locomotive's headlight and ditch lights

were operating properly at the time of the accident.  (Edwards Dep. at 27, ll. 3-4.)

Plaintiff Edwards has admitted that his locomotive cab seat was securely mounted and

braced, as required by relevant federal regulations.  (*Id.* at 48, ll. 3-11.)  Plaintiff Terrell

has not claimed that his cab seat was insecurely mounted or braced; his only complaint

about the cab seat is that it did not have enough air cushioning.  (Terrell Dep. at 140, ll.

16-20.)  Plaintiff Terrell admits that the sole cause of the collision was the negligence of

the dump truck driver Byers.  (*Id.* at 70-71, ll. 21-25, 1-5.)

Plaintiffs seek money judgments against CP Rail pursuant to the FELA, 45

U.S.C. § 51 *et seq.*  Their complaints are based on their allegations that the locomotive

seats in which they were riding were unsafe.  (Terrell Compl. ¶ 6; Edwards Compl. ¶ 6.)

Specifically, Plaintiffs contend that CP Rail failed to (1) provide a seat with adequate air

cushioning (Terrell Dep. at 139, ll. 8-21; Edwards Dep. at 28, ll. 9-15); (2) provide

adequate warning devices at the Baseline Road crossing (Terrell Compl. ¶ 6; Edwards

Compl. ¶ 6; Terrell Dep. at 71, ll. 13-14); and (3) adequately eliminate vegetation along

the track near the crossing.  (Terrell Compl. ¶¶ 6-7; Edwards Compl. ¶¶ 6-7.)  They also

contend more generally that CP Rail failed to provide them with a reasonably safe place to work.  Defendant denies the claims.

## II.    DISCUSSION

Defendant moves for partial summary judgment.  The court applies the familiar summary judgment standard.  Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the case under the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party may not rest on conclusory allegations, but must offer evidence showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

Defendant contends that Plaintiffs' FELA claims fail as a matter of law because (1) the seats in the locomotive cab complied with the Boiler Inspection Act (BIA), 49 U.S.C. § 20701 *et seq.*, and its regulations such that Plaintiffs' claims that it failed to

5

provide adequate seat cushioning are superseded by the BIA;[4] (2) its warning devices at the Baseline Road crossing were installed pursuant to a federally-approved and funded project and complied with the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 *et seq.*, and its regulations such that the claims that it failed to provide adequate warning devices are precluded by FRSA and the rationale of *Waymire v. Norfolk & Western Railway Co.*, 218 F.3d 773 (7th Cir. 2000); and (3) the sole and proximate cause of the accident was the negligence of the dump truck driver, and Plaintiffs have no evidence to support their claim that CP Rail failed to adequately eliminate vegetation at the crossing.

Under the FELA, railroad carriers are liable in damages "to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence" of the railroad or its employees.  45 U.S.C. § 51; *see Schadel v. Iowa Interstate R.R.*, 381 F.3d 671, 674-75 (7th Cir. 2004).  Thus, the "FELA imposes on railroads a general duty to provide a safe workplace."  *McGinn v. Burlington N. R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996).  To prove that a railroad breached this duty, a "plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm [and] then show that this breach played any part, even the slightest, in producing the injury."  *Id.* (citing *Peyton v. St. Louis Sw. Ry. Co.*, 962 F.2d 832, 833 (8th Cir.1992), and *Rogers v. Miss. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)); *see also Darrough v. CSX Transp., Inc.*, 321 F.3d 674, 675 (7th Cir. 2003).  A plaintiff

---

[4]  The court refers to the BIA and the Locomotive Inspection Act ("LIA") interchangeably.

proceeding under the FELA "need only show slight evidence of negligence . . . the quantum of evidence required to establish liability" under FELA "is much less demanding than that in a standard negligence action." *McGinn*, 102 F.3d at 300. Nonetheless, even under this less demanding standard of proof, a plaintiff must produce some evidence of negligence. *Id.* at 300-01 (granting summary judgment where, inter alia, plaintiff offered no evidence that the lack of a luggage rack played any part in causing his injury or that the lack of lights was linked to his injury). Plaintiffs argue that from the evidence a reasonable jury could infer that Defendant breached its duty to provide a safe workplace by: (1) requiring them to use defective engine seats which leaked air cushioning and failed to provide sufficient protection in the crash, and (2) by failing to properly inspect, maintain, and repair the Baseline Road crossing such that it became hazardous to rail employees.

The Locomotive Inspection Act (LIA) requires that a locomotive and its parts and appurtenances in use on a railroad line be "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1).[5] The LIA supplements the FELA "by imposing on interstate railroads an absolute and continuing duty to provide safe equipment." *Urie v. Thompson*, 337 U.S. 163, 188 (1949). The Supreme Court in *Southern Railway Co. v. Lunsford*, 297 U.S. 398 (1936), interpreted the meaning of "parts and appurtenances" and held that "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [FRA] are within the statute." *Id.* at 402. The Court

---

[5] The LIA is the former Boiler Inspection Act (BIA), 45 U.S.C. § 23.

7

indicated that any devices or equipment that falls outside this definition are not excluded from the "usual rules relative to liability." *Id.*

A rail carrier's violation of the LIA or regulations results in strict liability under the FELA for injuries to its employees that result from the violation. *Lilly v. Grand Trunk W. R. Co.*, 317 U.S. 481, 485 (1943); *McGinn*, 102 F.3d at 298-300; *Walden v. Ill. Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992). However, a violation of the LIA or its regulations is not a necessary condition to finding liability under the FELA. *See*, *e.g.*, *King v. S. Pac. Transp. Co.*, 855 F.2d 1485, 1489 (10th Cir. 1988) (stating that the BIA supplements the FELA and "claims which cannot be maintained under the BIA are often actionable under the FELA"); *Mosco v. Baltimore & O.R.R.*, 817 F.2d 1088, 1092 (4th Cir. 1987) ("Although Mosco had no viable [BIA] claim based on the absence of protective devices from the windows of the locomotive's cab, it is possible that he might have stated a meritorious FELA claim based on the same facts."). Thus, even if Defendant did not violate the LIA or its regulations, this does not preclude a finding of liability under the FELA.

A rail carrier can violate the BIA, now the LIA, in two ways: (1) by breaching the broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary danger of personal injury, or (2) by failing to comply with the regulations issued by the Federal Railroad Administration (FRA). *McGinn*, 102 F.3d at 298-99. *McGinn* recognized that "49 C.F.R. § 229.119(c) imposes liability for failure to repair objects of which the engine cab is *comprised*. . . ." *Id.* at 300. Plaintiffs contend that Defendant violated at least two FRA regulations by using

8

defective engine seats: (1) 49 C.F.R. § 229.7 which requires that a locomotive and its appurtenances be "in proper condition and safe to operate in the service to which they are put without unnecessary peril to lief or limb," and (2) 49 C.F.R. § 229.45 which sets forth general safety requirements, requiring that "[a]ll systems and components on a locomotive . . . be free of conditions that endanger the safety of the crew. . . ."[6]

Defendant cites *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605 (1926), in which the Supreme Court considered the scope and effect of the BIA and held that it was intended to occupy the field of regulating locomotive equipment used on a railway and thus state legislation of matters in the field covered by the BIA is precluded. *Id.* at 613. The Court said that the power delegated to the federal government by the BIA "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances," *id.* at 611, and includes "the power to specify the sort of equipment to be used on locomotives. . . ." *Id.* at 612. *Napier*, however, did not directly address the effect of the BIA on FELA claims.

### A.    Seat Cushioning

Plaintiffs' FELA claims based on inadequate seat cushioning do not necessarily depend on any failure of Defendant to comply with FRA regulations. It is undisputed that Plaintiffs' cab seats were securely mounted and braced as required by applicable

---

[6] An engine cab seat is a part or appurtenance of a locomotive, *see*, *e.g.*, *Oglesby v. S. Pac. Transp. Co.*, 6 F.3d 603 (9th Cir. 1993) (BIA claim based on alleged improper and unsafe cab seat allowed to reach jury), and expressly regulated by FRA regulation, namely, 49 C.F.R. 229.119(a).

regulation.  49 C.F.R. § 229.119(a) ("Cab seats shall be securely mounted and braced.").

Defendant contends that it cannot be liable for failing to provide a certain level of air cushioning because seat cushioning is not an integral or essential part of a completed locomotive.  While it is true that a rail carrier may not be held liable under the BIA for failing to provide equipment not required by federal regulation or not an integral or essential part of a completed locomotive, *McGinn v. Burlington N. R. Co.*, 102 F.3d 295, 299 (7th Cir. 1996), once a carrier installs particular equipment on a locomotive, the BIA does require that it be maintained properly, 49 U.S.C. § 20701(1) (requiring that a locomotive and its parts and appurtenances in use on a railroad line be "in proper condition and safe to operate without unnecessary danger of personal injury."); *see McGinn*, 102 F.3d at 300, and the FELA, more generally, imposes a general duty on carriers to provide a safe workplace.  45 U.S.C. § 51; *Schadel v. Iowa Interstate R.R.*, 381 F.3d 671, 674-75 (7th Cir. 2004); *McGinn*, 102 F.3d at 300.

According to Defendant, Plaintiffs' FELA claims are superseded by the BIA.  It is difficult to discern how these claims would be superseded when the BIA was intended to supplement the FELA.  Tellingly, Defendant states that a claim of negligence with respect to the cab seat brought under state law would be preempted by the BIA.  But Plaintiffs' FELA claims do not rest on the cab seats themselves, but rather, the seat cushioning.

10

The rule and rationale of *Waymire v. Norfolk & Western Railway Co.*, 218 F.3d 773 (7th Cir. 2000), do not extend to this case.  In *Waymire*, the plaintiff train conductor sued the defendant railroad company under the FELA, alleging that the defendant's negligence in allowing the train to travel at an unsafe speed and in failing to install additional crossing warning devices caused or contributed to a train-truck accident that injured the plaintiff.  *Id.* at 774.  The Seventh Circuit held that the railroad could not be liable in a FELA negligence action because the complained of conduct complied with FRSA and its regulations.  The court followed the reasoning of *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993), and concluded that FRSA and its regulations superseded the plaintiff's claims based on alleged unsafe speed and inadequate warning devices.  *Waymire*, 218 F.3d at 775-77.  However, the *Waymire* plaintiff's FELA claims did not rest on the railroad's failure properly to maintain equipment installed on a locomotive, as do Plaintiffs' claims in this case.  Likewise with *Marshall v. Burlington N. Inc.*, 720 F.2d 1149 (9th Cir. 1983), and the other decisions cited by Defendant in support of its argument that the BIA supersedes the FELA claims.  *Waymire* does not stretch so far as Defendant would like.  *See Grimes v. Norfolk S. Ry. Co.*, 116 F. Supp. 2d 995, 1000-03 (N.D. Ind. 2000) (declining to extend *Waymire* to preclude a FELA claim for conduct by a railroad remotely covered by a FRSA regulation–safety of walkways along railroads).  Further, in *McGinn* the Seventh Circuit addressed the alleged violations fo the BIA and the FELA separately.  The court never so much as hinted that the FELA claims were preempted by the BIA.  Moreover, *Waymire* court seems to have qualified its holding: "To the extent that FELA, then, is inconsistent with FRSA on the issue of train speed and warning devices at grade crossings, we hold that

11

FRSA supersedes FELA." *Waymire*, 218 F.3d at 777.  This implies that FELA claims that are *not* inconsistent with FRSA are not superseded.  This view is confirmed in case law.  *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 556-67 (1987) ("absent an intolerable conflict between the two statutes [the FELA and the Railway Labor Act (RLA)], we are unwilling to read the RLA as repealing any part of the FELA"); *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 661 (7th Cir. 2001) (when deciding whether one federal statute precludes a claim brought under another federal statute, the court must analyze "both federal statutes[] to see if they are indeed incompatible or if they can be harmonized").

The LIA regulations do not require seat cushioning.  Plaintiffs do not claim that their cab seats failed to comply with the FRA regulation specifically addressing cab seats, 49 C.F.R. § 229.119(a).  Thus, the FELA claim based on inadequate seat cushioning does not seem inconsistent with any requirement under the LIA.  Plaintiffs do, however, contend that Defendant violated FRA regulations that generally require safe equipment, 49 C.F.R. §§ 229.7, 229.45.

Defendant contends that it cannot be held liable for failing to provide a certain amount of air cushioning because cushioning is neither required by applicable regulations nor an integral or essential part of a completed locomotive.  The cases in which plaintiffs attempted to state a claim under the LIA for the failure to install equipment, cited by Defendant, *e.g.*, *McGinn* (luggage racks), *King v. Southern Pacific Transp. Co.*, 855 F.2d 1485 (10th Cir. 1988) (armrests), *Sindoni v. Consolidated Rail Corp.*, 4 F. Supp. 2d 358 (M.D. Pa. 1996) (seat belts and airbags), and *Gardner v. CSX*

12

*Transportation, Inc.*, 498 S.E.2d 473 (W. Va. 1997) (seatbelts, armrests and cab seat with metal hinge), are thus inapposite to Plaintiffs' failure to maintain claim.  Also inapposite are *Thirkill v. J.B. Hunt Transport, Inc.*, 950 F. Supp. 1105 (N.D. Ala. 1996), and *Key v. Norfolk Southern Railway Co.*, 491 S.E.2d 511 (Ga. Ct. App. 1997), which are negligent design cases.

In *Oglesby v. Delaware & Hudson Railway Co.*, 180 F.3d 458 (2nd Cir. 1999), which Defendant cites in support of its supersession argument, the court did not address preemption or supersession of FELA claims.  The plaintiff's FELA claim had settled and was not part of the appeal.  Other cases cited by Defendant, see, *e.g.*, *Law v. General Motors Corp.*, 114 F.3d 908, 910-11 (9th Cir. 1997) (LIA preemption of state law claims), *Southern Pacific Transp. Co. v. Public Utility Commission*, 9 F.3d 807 (9th Cir. 1993) (no FELA claim asserted), and *Seift & Co. v. Wickham*, 230 F. Supp. 398 (S.D.N.Y. 1964) (action in which turkey packers sought declaration of their right to sell turkeys in New York under federally approved label), likewise do not stand for the proposition that the LIA supersedes FELA claims.  In fact, the *Law* decision which held that the BIA preempted state common law claims expressly recognized that railroad employees have a remedy against their employers under the FELA.  114 F.3d at 912.

However, the LIA does impose a duty on a railroad to "keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary peril to life or limb."  *McGinn*, 102 F.3d at 298-99.  A railroad can breach this duty when it fails to properly maintain parts and appurtenances of its locomotives

13

resulting in an unsafe condition.  *See*, *e.g.*, *King v. S. Pac. Transp. Co.*, 855 F.2d 1485,

1489 (10th Cir. 1988).  Even though the LIA did not require Defendant to provide seat

cushioning, having provided cushioned seats, Defendant had a duty under the LIA to

properly maintain the seats and, it follows, the seat cushioning as well.  *See Herold v.*

*Burlington N., Inc.*, 761 F.3d 1241 (8th Cir. 1985).  In *Herold*, the railroad had equipped

its locomotives with amber rotating beacons, though not required under FRA

regulations.  The beacon was not operating at the time of the collision–it had been

removed for repair.  The district court ruled that the beacon was an appurtenance of the

locomotive within the BIA and instructed the jury on the railroad's duty to maintain the

locomotive, parts and appurtenances.  *Id.* at 1245.  The railroad argued that since there

was no duty to install the beacon, there could be no violation of a duty to keep the

beacon in good repair.  The court rejected that argument, indicating that "[s]omething

can be an appurtenance for the purpose of the [BIA] even though it is not required by

federal regulation" and "once any part or appurtenance is attached to a locomotive, the

[BIA] requires it be maintained in good repair at all times."  *Id.* at 1246.  The court

reasoned:

> While the Interstate Commerce Commission is authorized to make
> rules and orders in furtherance of the enforcement of this law,
> nevertheless its failure to make a rule or an order covering every defective
> condition or construction within the meaning of section 2 of the [BIA] by no
> means relieves the carrier from complying with the provisions of that
> section.  If the amber beacon voluntarily installed by Burlington Northern is
> a part or appurtenance of the locomotive, then failure to maintain it in good
> operating condition is a violation of the [BIA].

*Herold*, 761 F.2d at 1246 (citations omitted).

Moreover, even though a plaintiff may have no claim under the LIA, he nonetheless may have a meritorious claim under the FELA based on the very same facts. *King*, 855 F.2d at 1488 n.1 ("claims which cannot be maintained under the BIA are often actionable under the FELA"); *Mosco v. Baltimore & O.R.R.*, 817 F.2d 1088, 1092 (4th Cir.) ("Although Mosco had no viable [BIA] claim based on the absence of protective devices from the windows of the locomotive's cab, it is possible that he might have stated a meritorious FELA claim based on the same facts."), *cert. denied*, 484 U.S. 851 (1987). Whether the alleged inadequate cushioning in the seats left the locomotive unsafe to operate without unnecessary risk of personal injury is a factual question. Thus, Defendant's partial motion for summary judgment is denied with respect to the FELA claims based on inadequate seat cushioning.[7]

## B. Warning Devices

---

[7] For the first time in Defendant's reply brief, it is argued that Plaintiffs offer no evidence to establish that the amount of air cushioning in their seats at the time of the collision made the seats more dangerous or less safe than seats without any cushioning whatsoever–seats which would comply with the LIA. Plaintiffs were not required to anticipate and respond to an argument that Defendant did not make in its moving papers. However, it is dubious that Plaintiffs will be able to prove that the lack of air cushioning rendered their seats unsafe and contributed to their injuries. It seems that one would bounce around less in seats that had lost some air than in seats that had not lost any air. But, this court does not purport to have an expertise in physics, and such proof would seem to require expert testimony. If all Plaintiffs have is their own belief that the seat cushioning leaked air before the collision, their claim ultimately may fail to reach the jury. Similarly, for the first time in reply Defendant contends that Plaintiffs have no evidence from which it could be inferred that the seat cushions lost air before the accident. As noted, Plaintiffs are not required to anticipate and respond to arguments not made until Defendant files its reply. That said, at trial Plaintiffs will need to offer such evidence in order to prevail on their claim regarding inadequate seat cushioning. If they have none, their victory at the summary judgment stage would be Pyrrhic.

The FELA claim based on allegedly inadequate warning devices requires a slightly different analysis.  Under the controlling authority of *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344 (2000) ("once the FHWA has funded the crossing improvement and the warning devices are actually installed and operating, the regulation displaces state and private decisionmaking authority"), and *Waymire v. Norfolk & Western Railway Co.*, 218 F.3d 773 (7th Cir. 2000), *cert. denied*, 531 U.S. 1112 (2001), Plaintiffs' FELA claims that Defendant should have installed gates and lights at the crossing in addition to or in lieu of the crossbucks and stop signs present-- are superseded by FRSA and its regulations.  *Waymire*, 218 F.3d at 776-77 (holding plaintiff's FELA claim that railroad negligently failed to install additional warning devices at crossing was superseded by FRSA and its regulations where crossing's warning devices were federally funded and approved by the Federal Highway Administration and were functioning at the time of the collision).  Accordingly, Defendant is entitled to partial summary judgment on these claims.

However, Plaintiffs also base their inadequate warning claims on the allegation that the crossbuck sign was not fully functioning and/or was in disrepair.  In *Shanklin* the crossbuck signs at the crossing were installed "and fully compliant with the federal standards for such devices."  529 U.S. at 350.  In *Waymire* it was undisputed that the crossing's warning devices were both federally funded *and* functioning at the time of the collision.  *Waymire*, 218 F.3d at 777.  This is not an unimportant detail.  It is because the devices were functioning that they satisfied the FRSA regulations.  If Defendant's position were taken to an extreme, it could hide behind FRSA and *Waymire* by installing

16

crossbucks even if the crossbucks had fallen to the ground and were unobservable by a passing motorist. The court is hesitant to say as a matter of law that the crossbuck signs were fully compliant with federal standards and not in disrepair, particularly where this issue has not been fully briefed by the parties.[8]

## C.     Vegetation & Sight Line

Plaintiff's FELA claim also alleges that Defendant failed to clear vegetation around the crossing and provide adequate sight lines. Defendant contends that this claim is not supported by the evidence and fails as a matter of law. It argues that Plaintiff Terrell testified that nothing CP Rail could have done would have prevented the accident. Defendant also claims that the photographic evidence shows that the truck driver had an unobstructed view of an oncoming train coming from the direction that Plaintiffs' train was traveling at the time of the accident. Plaintiffs argue their evidence raises a genuine issue of fact regarding the allegedly obstructed view.

The "FELA is to be liberally construed, it is not a workers' compensation statute." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994). A plaintiff under FELA must establish the traditional elements of a negligence claim: duty, breach, causation, and injury. *See Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998).

---

[8] Plaintiffs need not rely on the declaration of their lawyer or the attached photographs to establish the condition of the crossbuck sign. The photograph taken by Ms. Ryan only two days after the accident is sufficient to put the condition of the crossbuck sign in issue. But again, the court agrees with Defendant that it seems Plaintiffs face a tough road in proving that the CP Rail's maintenance of the crossbuck sign, or lack thereof, played even the slightest part in producing Plaintiffs' injuries, but the causation argument was not argued until the filing of the reply.

Thus, a plaintiff "who fails to produce even the slightest evidence of negligence will lose at summary judgment." *Id.* at 1061-62 (citing *McGinn v. Burlington N. R. Co.*, 102 F.3d 295, 301 (7th Cir. 1996)). A railroad has a common law duty to maintain safe crossings and its failure to maintain a safe crossing may be negligence. *See, e.g., Webb v. CSX Transp., Inc.*, — S.E.2d ----, 2004 WL 3392996, at *5-6 (S.C. June 20, 2005); *Norfolk S. Ry. Co. v. Smith*, 611 S.E.2d 427, 431 (N.C. App. 2005); *Ala. Great S. R. Co. v. Lee*, 826 So.2d 1232, 1236 (Miss. 2002). Courts have indicated that in negligence cases, whether one's view is obstructed by excessive vegetation which prevents him from viewing an approaching train and renders the crossing unsafe generally is a matter for the factfinder. *E.g., Clark v. Ill. Cent. R. Co.*, 794 So.2d 191, 194-95 (Miss. 2001).

Plaintiffs' allege that the vegetation adjacent to the track at the Baseline Road crossing obstructed the view of oncoming motorists. But they have presented insufficient evidence with which to create a material fact with regard to this issue. Mr. Edwards testified that he "believe[d] the vegetation should have been cut back far enough for the truck driver to be able to see [the train] in plenty of time," (Edwards Dep. at 30), but Plaintiffs offer no admissible evidence to raise a genuine issue of fact that the vegetation was not cut back far enough to allow the driver to see the train in enough time. The only admissible and material evidence establishes that the vegetation was maintained in such a way as to allow a driver to observe a train approaching from the same direction as Plaintiffs' train approached (approaching from the north) in time to avoid a collision. Plaintiffs offer photographs taken by their attorney to show that the vegetation near the crossing was overgrown and obstructed a driver's view of an

18

approaching train, but the photographs were taken three years after the collision in this case and there is no indication that they fairly and accurately represent the vegetation growth or view as they existed on the date of the collision.  In contrast, Defendant produced the photographs taken by Ms. Ryan within two days of the collision which fairly and accurately represent the view of the crossing from the perspective of a motorist approaching from the east–as Mr. Byer did--and looking north–the direction from which Plaintiffs' train was coming--on the day of the collision.  These photos show a clear and unobstructed view of the approach from the north in excess of a quarter mile.  Moreover, the copies of photographs attached to Mr. Jungbauer's declaration depict the view that an approaching motorist had from 200 feet and 250 feet.  Plaintiffs offer no legal authority to establish that Defendant had a duty to maintain vegetation at that distance from the grade crossing.  Thus, even viewing the evidence in the light most favorable to Plaintiffs, they have not raised a reasonable inference that Defendant negligently maintained the vegetation growth at the Baseline Road crossing, or that the allegedly overgrown vegetation caused the collision in any way.  Therefore, summary judgment should be granted on the FELA claim premised on Defendant's alleged failure to adequately eliminate vegetation and maintain an adequate sight line along the track near the Baseline Road crossing.  *See Cusson Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992) (conclusory allegations without any factual support are insufficient to create a genuine issue of fact).

**III.     CONCLUSION**

19

Accordingly, Defendant's Motion for Partial Summary Judgment (Dkt. No. 53) is **GRANTED IN PART** and **DENIED PART** consistent with this entry.  Thus, summary judgment will be granted on the FELA claims alleging Defendant failed to install adequate warning devices in addition to or in lieu of the crossbucks and stop signs and failed to clear vegetation around the crossing and provide adequate sight lines, but denied in all other respects.  Accordingly, the FELA claims based on inadequate seat cushioning and the allegation that the crossbuck sign was not fully functioning and/or was in disrepair remain for trial, as do Plaintiff Terrell's claims arising out of an incident on October 10, 2001.

Final judgment will not be issued at this time on the claims subject to summary judgment under the court's rulings in this entry because of the pendency of the other closely related claims which remain for trial.

ALL OF WHICH IS ENTERED this 31st day of August 2005.

_____

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William G. Hussmann, Jr.

Don C. Aldrich
745 Kasota Avenue SE
Minneapolis, MN 55141

John C. Duffey
Stuart & Branigin LLP

20

jcd@stuartlaw.com

Heather L. Emenhiser
Stuart & Branigin LLP
hle@stuartlaw.com

Robert Francis Hellmann
Hellmann Law Offices
hellmannbob@verizon.net

Louis Edward Jungbauer
Yaeger Jungbauer & Barczak
ljungbauer@yjblaw.com